UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAD MOBILE, INC.,

       *Plaintiff*,

v.

MEIJER GREAT LAKES LIMITED
PARTNERSHIP,

       *Defendant*.

Case Number: 1:23-cv-1020

HON. ROBERT J. JONKER

ORAL ARGUMENT REQUESTED

---

**Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)**

Defendant Meijer Great Lakes Limited Partnership ("Meijer"), through its attorneys, Quinn Emanuel Urquhart & Sullivan, LLP submits the following Motion to Compel Arbitration and Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

As further discussed in the attached brief, Meijer is entitled to dismissal of the Complaint because the parties have agreed to arbitrate disputes arising under their contracts and because Plaintiff fails to state a claim upon which relief can be granted.

In accordance with W.D. Mich. L.R. 7.1(d), Meijer's counsel contacted Plaintiff's counsel to ascertain whether the motion would be opposed.  It will be.

WHEREFORE, Meijer respectfully requests that this Court enter judgment in its favor compelling the parties to arbitrate their dispute and dismissing all of Plaintiff's claims with prejudice.

DATED: October 20, 2023             Respectfully submitted,


                                    By: */s/ Daniel Lombard*
                                        Daniel Lombard
                                        Brianne M. Straka
                                        Marc L. Kaplan
                                        QUINN EMANUEL URQUHART & SULLIVAN
                                        LLP
                                        191 N. Wacker Drive, Suite 2700
                                        Chicago, Illinois 60606
                                        Telephone: (312) 705-7400
                                        Fax: (312) 705-7401
                                        E-Mail: daniellombard@quinnemanuel.com
                                        E-Mail: briannestraka@quinnemanuel.com
                                        E-Mail: marckaplan@quinnemanuel.com

                                        VARNUM LLP
                                        Perrin Rynders (P38221)
                                        Bridgewater Place, P.O. Box 352
                                        Grand Rapids, MI 49501-0352
                                        Telephone: (616) 336-6000
                                        E-Mail: prynders@varnumlaw.com

                                        *Attorneys for Defendant Meijer*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MAD MOBILE, INC., | |
| *Plaintiff*, | |
| v. | Case Number: 1:23-cv-1020 |
| MEIJER GREAT LAKES LIMITED PARTNERSHIP, | HON. ROBERT J. JONKER |
| *Defendant*. | ORAL ARGUMENT REQUESTED |

**Brief in Support of Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)**

Daniel R. Lombard
Brianne Straka
Marc L. Kaplan
QUINN EMANUEL URQUHART &
SULLIVAN LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel. 312-705-7400
Fax 312-705-7401

Perrin Rynders
VARNUM RIDDERING SCHMIDT &
HOWLETT LLP
Bridgewater Place
333 Bridge Street, NW
PO Box 352
Grand Rapids, MI 49501
Tel. 616-336-6734

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION.................................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................................. 2

III.  ARGUMENT........................................................................................................... 4

      A.    THE COURT SHOULD DISMISS THIS ACTION SO THAT THE
              ARBITRATORS CAN DECIDE WHETHER MAD MOBILE'S CLAIMS
              BELONG IN ARBITRATION.......................................................................... 4

      B.    EVEN IF THE COURT CONCLUDES IT CAN ANSWER THE
              ARBITRABILITY QUESTION ON ITS OWN, THE CLAIMS MAD
              MOBILE RAISES IN ITS COMPLAINT SHOULD BE ARBITRATED............ 9

IV.  CONCLUSION....................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

## Cases

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) .................................................. 10

*Baker v. Iron Workers Loc. 25 Vacation Pay Fund*,
  999 F.3d 394 (6th Cir. 2021) .............................................................................................. 4

*Blanton v. Domino's Pizza Franchising LLC*,
  962 F.3d 842 (6th Cir. 2020) .............................................................................................. 6

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) .................................................. 5

*Glazer v. Lehman Bros.*,
  394 F.3d 444 (6th Cir. 2005) ............................................................................................ 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524, 202 L. Ed. 2d 480 (2019) ........................................................................... 5

*Huffman v. Hilltop Companies, LLC*,
  747 F.3d 391 (6th Cir. 2014) ........................................................................................9, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) .......................................................... 4

*NCR Corp. v. Korala Assocs., Ltd.*,
  512 F.3d 807 (6th Cir. 2008) ............................................................................................ 11

*Nestle Waters N. Am., Inc. v. Bollman*,
  505 F.3d 498 (6th Cir. 2007) ............................................................................................ 11

*Scott v. Inter-Con Sec. Sys., Inc*,
  No. 19-CV-12655, 2021 WL 3401218 (E.D. Mich. Aug. 4, 2021) .................................... 11

*Stout v. J.D. Byrider*,
  228 F.3d 709 (6th Cir. 2000) ............................................................................................ 11

*Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*,
  878 F.2d 167 (6th Cir. 1989) .............................................................................................. 4

## Statutes

Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. .........................................9, 10, 11

Federal Arbitration Act, 9 U.S.C. § 1 et seq..................................................................4, 5, 7, 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 13

## I.      INTRODUCTION

Meijer Great Lakes Limited Partnership ("Meijer") contracted Mad Mobile, Inc. ("Mad Mobile") to deliver point of sale software, and because it failed to do so—after years of unacceptable delays and millions of dollars wasted by Meijer—Meijer terminated the parties' agreements.  In response, Mad Mobile likewise terminated the agreements and now alleges a fanciful, long-game conspiracy that Meijer sought to steal its trade secrets and proprietary information.  Pursuant to the parties' agreements requiring disputes to be arbitrated, Mad Mobile filed an arbitration demand with the AAA alleging breach of contract, copyright infringement, and trade secret misappropriation.  In the arbitration, Meijer denied that Mad Mobile is entitled to any relief and counterclaimed for breach of contract.  Yet, Mad Mobile also filed this action, in parallel with the ongoing arbitration, seeking to expedite its claimed relief.

Mad Mobile's action in this Court should not proceed because the parties' agreement states that "[a]ny controversy or claim arising [or] relating to this Agreement or any [Statement of Work] will be determined only by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules."  2019 Agreement,  ECF No. 24-5, PageID.568.  Mad Mobile, therefore, brings its action in contravention of the parties' agreed-upon dispute resolution process, which Mad Mobile tacitly admits by bringing the same claims in a separate demand for arbitration. Because Mad Mobile cannot state a proper claim outside of arbitration, the Court should dismiss Mad Mobile's action and compel Mad Mobile to resolve its claims in the pending arbitration. Doing so would also prevent Mad Mobile from strategically disadvantaging Meijer.  By filing its improper motion for preliminary injunctive relief, Mad Mobile seeks to multiply the proceedings (and costs) by prosecuting the same claims against Meijer in two fora at the same time, to seek broader discovery than it would be entitled to in arbitration, and to prioritize its affirmative claims over Meijer's counterclaims.  The Court should dismiss Mad Mobile's complaint.

## II.    FACTUAL BACKGROUND

Meijer operates a chain of more than 250 supercenters in Michigan and other states in the Midwest.  Meijer's supercenters offer both groceries and department store items (such as apparel and electronics) in the same location.  In 2018, Meijer solicited bids from several software firms to design a next generation point of sale system.  Although Meijer had operated point of sale systems in its stores for many years, it sought to update those systems.  Mad Mobile was one of the bidders, and although it did not have experience designing point of sale systems for grocery stores, it represented that it had the capability to handle the assignment.  Based on the competitiveness of Mad Mobile's bid, including its promised pricing and product delivery timelines, Meijer selected Mad Mobile to help it build components of its next generation point of sale systems.

The parties subsequently entered into a series of agreements regarding the software Mad Mobile was supposed to provide to Meijer.  In Section 13.2 of the original 2019 Agreement, the parties agreed that "[a]ny controversy or claim arising [or] relating to this Agreement or any [Statement of Work] will be determined only by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules."  2019 Agreement,  ECF No. 24-5, PageID.568  The parties stated in Section 13.3 of the same document that "[a] party must follow and participate in the processes outlined in Section[] . . . 13.2 above before pursuing litigation or any other remedy," adding that Meijer "shall not be precluded from seeking injunctive relief in connection with this agreement or any SOW."[1]

_____

[1]  Section 10 of SOW #1, attached to the original 2019 Agreement, refers to "emergency equitable relief," but it is not relevant here because Mad Mobile's claims are not related to Section 10, which covers  "Transition Services" when a "Triggering Event" occurs.  Section 10 permits either party to seek emergency equitable relief to get a declaration determining whether a Triggering Event has occurred (*e.g.*, Mad Mobile is no longer able to support its software).  It has no bearing on Mad Mobile's claims allegedly relating to breach of Sections 3.1, 5.3, 8.1 &

Unfortunately, Mad Mobile quickly began encountering issues developing the required software.  Mad Mobile delivered software that was filled with bugs, did not reliably function, and failed to meet Meijer's design specifications.  Meijer continuously identified critical bugs in Mad Mobile's software, despite Mad Mobile's duty to test its own software.  *See* SOW #1,  ECF No. 24-6, PageID.577 ("Licensor shall test all deliverables for quality assurance and compliance with Licensee's requirements prior to submission to acceptance testing.").  Mad Mobile missed critical deadlines and blew its budget repeatedly, even after Meijer made a series of concessions regarding budget and deadlines, and critically, Mad Mobile was never able to deliver usable versions of software to Meijer.  As a result, Meijer was never able to generally deploy Mad Mobile's software in its stores, and Meijer was forced to terminate the parties' relationship.  In the end, Meijer paid Mad Mobile nearly $8.5 million but never received the software Mad Mobile was required to deliver.

Mad Mobile alleges that in March 2023, Meijer ended the parties' relationship, and later formally terminated the parties' agreements.  Complaint ¶¶ 48, 57.  Afterwards, Mad Mobile also terminated the parties' agreements.  *Id.* at ¶ 58.  On September 14, 2023 Mad Mobile filed a demand for arbitration with the American Arbitration Association ("AAA").  *Id.* at ¶ 73  In its demand, Mad Mobile alleged that Meijer had breached the parties' contracts, anticipatorily repudiated and improperly terminated their agreements, breached the covenant of good faith and fair dealing, and misappropriated Mad Mobile's trade secrets.  *Id.* at 21-25.  In its arbitration demand, Mad Mobile specifically requests injunctive relief with respect to its breach of contract and trade secrets claims.

---

14.2 of the Software Services Agreement (related to the use of Mad Mobile's software and Meijer's confidentiality obligations).

Nonetheless, Mad Mobile followed its arbitration demand with its Complaint in this action, also seeking injunctive relief, on September 27, 2023.  ECF No. 1.

## III.    ARGUMENT

### A.    THE COURT SHOULD DISMISS THIS ACTION SO THAT THE ARBITRATORS CAN DECIDE WHETHER MAD MOBILE'S CLAIMS BELONG IN ARBITRATION.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. generally provides that contractual agreements "to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2.  The FAA grants "a party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement" the right to seek "an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.  Specifically, Section 3 of the FAA states, in part, that "on application of one of the parties" a Court may "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]"  9 U.S.C. § 3.  In the Sixth Circuit, "an arbitration agreement presents a reason to dismiss under 12(b)(6) . . . for failure to state a claim." *Baker v. Iron Workers Loc. 25 Vacation Pay Fund*, 999 F.3d 394, 400 (6th Cir. 2021); *see Nealy v. Shelly & Sands*, Inc., 852 F. App'x 879, 881 (6th Cir. 2021) ("We consider a Rule 12(b)(1) motion to dismiss based on a failure to arbitrate as a motion to dismiss for failure to state a claim upon which relief may be granted.").

It is well established that federal policy requires "rigorously enforc[ing] agreements to arbitrate." *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th Cir. 1989).  Moreover, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d

765 (1983).  Nevertheless, the Court must first answer the threshold question of whether a valid arbitration agreement exists before moving any further in its FAA analysis.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530, 202 L. Ed. 2d 480 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.").

Here, it is undisputed that a valid arbitration agreement exists.  Section 13.2 of the parties' 2019 Agreement is an arbitration clause, and in accordance with this clause, Mad Mobile filed an arbitration demand with the AAA on September 14, 2023 including the same claims it presents in this action.

Having established the existence of a valid arbitration agreement between the parties, the Court must next determine "if the agreement delegates the arbitrability issue to an arbitrator[.]" *Henry Schein, Inc.*, 139 S. Ct. at 530.  That is, the Court must determine whether disputes as to the scope and validity of the arbitration clause should be heard by the Court or by the arbitrator. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable evidence that they did so."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995) (brackets and internal quotation marks omitted).

In this case, the arbitration clause states that arbitrability should be determined in arbitration.  Under the clause, the parties agreed that "[a]ny controversy or claim arising [or] relating to this Agreement or any [Statement of Work] will be determined only by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules." 2019 Agreement,  ECF No. 24-5, PageID.568.  The parties therefore incorporated the Commercial Arbitration Rules of the American Arbitration Association ("AAA") into their agreement.  The

AAA's Commercial Arbitration Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Arbitration Rules, R–7(a); *see also DHL Info. Servs. (Americas), Inc. v. Infinite Software Corp.*, 502 F. Supp. 2d 1082, 1083–84 (C.D. Cal. 2007) ("The Court declines to rush in where the arbitrator is free to tread. Since under the agreement of the parties, almost all their disputes are going to arbitration where interim relief is authorized, it is best not to carve out interim relief from the issues the arbitrator will decide, even though Rule 34(c) of the AAA Rules would allow this Court to do so."). By incorporating Rule R-7(a), the parties have demonstrated "clearly and unmistakably" that they wish the arbitrator to determine the scope and validity of the arbitration clause. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) ("[E]very one of our sister circuits to address the question—eleven out of twelve by our count—has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.' . . . [T]o the extent that there's any ambiguity in our prior decisions, we officially do so today."). Thus, this case should be dismissed so that a AAA panel—and not this Court—can decide whether a judge or an arbitral panel is competent under the parties' agreement to hear Mad Mobile's claims.

Mad Mobile cannot escape this reality by pleading that requests for injunctive relief are outside the scope of arbitration. Again, through the parties' broadly worded arbitration clause and incorporation of the AAA rules into their 2019 Agreement, the parties "clearly and unmistakably" committed the question of arbitrability to a AAA panel. *Id.* Indeed, Mad Mobile seeks injunctive relief through its arbitration demand for its breach of contract and trade secret claims in the arbitration. Although Mad Mobile does not seek *interim* injunctive relief through the AAA

arbitration process, Mad Mobile could attempt to seek that remedy in the arbitration.   AAA Commercial Arbitration Rules, R–37(a) ("The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief[.]").   A decision by this Court to answer for itself whether issues of injunctive relief fall within the proper purview of a AAA panel would circumvent the parties' clearly expressed desire to arbitrate and the federal preference for strict enforcement of arbitration clauses.

Mad Mobile contends that this "Court has jurisdiction to award preliminary injunctive relief, notwithstanding the parties' agreement to arbitrate their disputes."   Complaint ¶ 10.   As support for its claim, Mad Mobile relies on *Performance Unlimited v. Questar Publishers*, which held that courts may at times award preliminary injunctive relief in cases subject to arbitration under the FAA.  52 F.3d 1373, 1380 (6th Cir. 1995).  The facts considered by the court in *Questar Publishers*, however, are entirely different than those presented here.   In *Questar Publishers* the plaintiff showed a dire emergency where it would not be able to "continue to operate more than another two to three weeks" without injunctive relief, whereas here Mad Mobile is in no danger of imminent "economic collapse or insolvency," *id.* at 1381-82, and indeed it waited nearly six months after Meijer allegedly "fired" it to file this lawsuit.  *See* Complaint, ECF No. 1; *see also Glob. Generation Grp., LLC v. Mazzola*, No. 2:13-CV-14979, 2014 WL 1772417, at *6 (E.D. Mich. May 2, 2014) ("Plaintiffs delay in bringing the instant motion suggests they will not suffer irreparable harm. Plaintiffs filed the instant action nearly five months ago, yet they are just now requesting injunctive relief.").   Furthermore, the arbitration agreement in *Questar Publishers* did not provide for interim injunctive relief, as the AAA does here, and instead merely allowed the

three selected arbitrators to "together determine the process of mediation," 52 F.3d 1373 at 1376, which may not have allowed for injunctive relief.[2]

Despite Mad Mobile's hollow and unexplained assertions that it will experience irreparable harm without the grant of preliminary injunctive relief by this Court, *see, e.g.*, Complaint ¶ 91, Mad Mobile has proven that it is in no hurry to receive a remedy.  Meijer allegedly "fired" Mad Mobile in March 2023, *id.* ¶ 48, and then terminated the parties' relationship in July 2023.  *See id.* ¶ 56.  However, Mad Mobile waited to file an arbitration demand to resolve the dispute until September 14, 2023 and declined to seek preliminary injunctive relief through the arbitration process.  Mad Mobile then waited another two weeks to file this action in federal court.  This timeline of Mad Mobile's actions belies Mad Mobile's claims of urgency and fear of irreparable harm, and instead underscores the propriety of dismissing Mad Mobile's complaint and allowing a AAA panel to determine the issue of arbitrability.  Indeed, the arbitration agreement requires resolution in 180 days, Dkt. 24-5 at 11, and therefore the arbitration would be nearly complete had Mad Mobile filed when the dispute first arose.

Far from seeking relief from a genuine wrong, through this action Mad Mobile is attempting to have an unfair second bite at the apple.  Mad Mobile raised the same breach of contract and misappropriation of trade secrets claims in its demand for arbitration that it pleads here, and it likewise sought injunctive relief for both of those claims in that arbitration.  Mad

---

[2]  Mad Mobile's reliance on Questar Publishers is also misplaced because that case limited the duration of any court-issued preliminary injunction to "prior to the time the arbitration proceeds." 52 F.3d at 1386. "[O]nce the arbitration begins, it is for the arbitrators to decide how to maintain the status quo during the pendency of the arbitration process." Id. Here, the arbitration has already begun, with the parties originally set to identify their arbitrators today, although that deadline was reset to Wednesday, October 25th on Mad Mobile's request. The arbitration will proceed once the third arbitrator is determined, and therefore Mad Mobile's preliminary injunctive relief request is already moot or will be shortly.

Mobile is also attempting to strategically prioritize its claims over Meijer's counterclaims by operating under the guise of preliminary injunctive relief.   In the arbitration, Meijer has counterclaimed that Mad Mobile breached the parties' agreements and owes Meijer damages for those breaches.   Allowing Mad Mobile's unilateral claims to precede the bilateral arbitration prioritizes Mad Mobile's relief and reduces the inherent balance requiring parties to act reasonably in discovery given their reciprocal obligations.   Mad Mobile's bid to have this Court resolve *only* its claims ahead of Meijer's, with no reciprocal discovery obligations, should be rejected.

### B.   EVEN IF THE COURT CONCLUDES IT CAN ANSWER THE ARBITRABILITY QUESTION ON ITS OWN, THE CLAIMS MAD MOBILE RAISES IN ITS COMPLAINT SHOULD BE ARBITRATED.

Mad Mobile raises three counts in its complaint, each of which the parties agreed to arbitrate.   First, it alleges that Meijer has breached three provisions of the 2019 Agreement. Specifically, Mad Mobile claims that Meijer has violated Sections 3.1 and 5.3 of the agreement by "failing to 'cease using' [Mad Mobile's] Software" as required by those provisions and Section 14.2 "by using (and/or allowing third parties to use) Mad Mobile's Confidential Information, including the Software and Proprietary Information, for purposes not authorized by the [2019 Agreement." Complaint ¶¶ 78-79.   Second, Mad Mobile alleges that  Meijer misappropriated Mad Mobile's trade secrets under the Federal Defend Trade Secrets Act ("DTSA").  *Id.* ¶¶ 84-93.  And third, Mad Mobile contends that Meijer misappropriated Mad Mobile's trade secrets under New York common law.  *Id.* ¶¶ 94-102.

As noted above, however, the parties agreed that "[a]ny controversy or claim arising [or] relating to this Agreement or any [Statement of Work] will be determined ***only*** by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules." 2019 Agreement § 13.2 (emphasis added).  The parties used broad and inclusive language to make

clear their intent to exclusively arbitrate "any" claim "relating" to or "arising" from their agreements.  Under Sixth Circuit precedent, clauses containing such language are to be interpreted as "broadly-worded." *Huffman v. Hilltop Companies, LLC*, 747 F.3d 391, 395 (6th Cir. 2014) ("Under this circuit's precedent, the arbitration clause in this case is fairly described as being broadly-worded because its language indicating that '[a]ny Claim arising out of or relating to this Agreement, or the breach thereof" will be submitted to arbitration is not only far-reaching but also very similar to other arbitration clauses that this court has described as 'broad.'").  And once the Court determines that an arbitration clause is broadly-worded, the parties should be compelled to arbitrate unless it can be said with "positive assurance" that the claims at bar do not fall within the scope of the parties' agreement to arbitrate.  *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419, 89 L. Ed. 2d 648 (1986) (holding that once a Court determines that an arbitration agreement is broad in scope, an order to arbitrate should not be denied "unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (citation omitted)).

Because Mad Mobile's breach of contract claims clearly arise from or relate to the parties' agreements, and because it cannot be said with positive assurance that the parties did not intend to arbitrate these breach of contract claims, this court must dismiss these claims so that they may be properly adjudicated by an arbitral panel.  *See Huffman*, 747 F.3d at 399 (reversing a district court's denial of a motion to dismiss and compel arbitration in a case where the parties had agreed to a broadly-worded arbitration clause).  In fact, it is assured that Mad Mobile's breach of contract claims here can and should be arbitrated because Mad Mobile has requested injunctive relief for those breach of contract claims in the arbitration already.

Like its breach of contract claims, Mad Mobile's claim under the DTSA should be dismissed and resolved in arbitration.  As required by the parties' arbitration agreement, the claim "arise[s]" or "relat[es]" to the Agreement or a Statement of Work because Meijer has allegedly come into possession of the alleged trade secrets as a result of the parties' contractual relationship. Where "an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement[.]"  *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008) (quoting *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 505 (6th Cir. 2007)).  This is impossible here, so "the presumption in favor of arbitrability and the intent of the parties" is maintained.  *Id.*  Because Mad Mobile's DTSA claim is a federal statutory claim, the Court "must consider whether Congress intended [the] claim[] to be nonarbitrable[.]" *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  Nothing in the text of the DTSA suggests that Congress intended claims arising under the statute to be nonarbitrable. *See* 18 U.S.C. § 1836, et seq.  And  "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Nestle Waters N. Am., Inc.*, 505 F.3d at 503 (citations omitted). Moreover, Mad Mobile itself acknowledged that its claims were arbitrable when it filed its arbitration demand, which included all three counts presented in this action, including a demand for injunctive relief for each.

Under largely the same analysis, this Court should also dismiss Mad Mobile's New York state common law trade secret misappropriation claim.  As with the its DTSA claim, its state misappropriation claim "arise[s]" or "relat[es]" to the Agreement or a Statement of Work because Meijer would have allegedly come into contact with Mad Mobile's alleged trade secrets as a result of the parties' contractual relationship.  Michigan federal courts have found that arbitration agreements apply to state tort law claims. *See, e.g.*, *Scott v. Inter-Con Sec. Sys., Inc.*, No. 19-CV-

12655, 2021 WL 3401218, at *4-*5 (E.D. Mich. Aug. 4, 2021) (granting a defendant's motion to dismiss and to compel arbitration over a plaintiff's arguments that his state law employment discrimination claims were not arbitrable).  And where ambiguity exists regarding arbitrability, the matter "must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA." *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005) (internal citation omitted).  Once again, it is clear that Mad Mobile can arbitrate its state law trade secret claims because it has demanded arbitration of those claims, including demands for injunctive relief.

## IV.    CONCLUSION

Meijer  respectfully requests that the Court grant its motion to compel arbitration and dismiss Mad Mobile's complaint.

DATED: October 20, 2023                Respectfully submitted,


By: */s/ Daniel Lombard*
     Jonathan Bunge
     Daniel Lombard
     Brianne M. Straka
     Marc L. Kaplan
     QUINN EMANUEL URQUHART & SULLIVAN
     LLP
     191 N. Wacker Drive, Suite 2700
     Chicago, Illinois 60606
     Telephone: (312) 705-7400
     Fax: (312) 705-7401
     E-Mail: jonathanbunge@quinnemanuel.com
     E-Mail: daniellombard@quinnemanuel.com
     E-Mail: briannestraka@quinnemanuel.com
     E-Mail: marckaplan@quinnemanuel.com

     VARNUM LLP
     Perrin Rynders (P38221)
     Bridgewater Place, P.O. Box 352
     Grand Rapids, MI 49501-0352
     Telephone: (616) 336-6000
     E-Mail: prynders@varnumlaw.com

     *Attorneys for Defendant Meijer*

**Defendant's Rule 7.2(b)(ii) Certificate of Compliance**

Defendant Meijer Great Lakes Limited Partnership ("Meijer"), through its attorneys, Quinn Emanuel Urquhart & Sullivan, LLP, hereby certifies pursuant to W.D. Mich. L.R. 7.2(b)(ii) that its Motion to Compel Arbitration and Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) does not exceed 10,800 words as limited in LR 7.2(b)(i). Defendant's total submission is 3,742 words calculated by the Microsoft 365 Apps for Enterprise Word Application.

DATED: October 20, 2023    Respectfully submitted,

By: */s/ Daniel Lombard*
  Jonathan Bunge
  Daniel Lombard
  Brianne M. Straka
  Marc L. Kaplan
  QUINN EMANUEL URQUHART & SULLIVAN
  LLP
  191 N. Wacker Drive, Suite 2700
  Chicago, Illinois 60606
  Telephone: (312) 705-7400
  Fax: (312) 705-7401
  E-Mail: jonathanbunge@quinnemanuel.com
  E-Mail: daniellombard@quinnemanuel.com
  E-Mail: briannestraka@quinnemanuel.com
  E-Mail: marckaplan@quinnemanuel.com

  VARNUM LLP
  Perrin Rynders (P38221)
  Bridgewater Place, P.O. Box 352
  Grand Rapids, MI 49501-0352
  Telephone: (616) 336-6000
  E-Mail: prynders@varnumlaw.com

  *Attorneys for Defendant Meijer*